THOMAS E. MULVIHILL, ESQ. (SBN 129906)
TAMIKO A. DUNHAM, ESQ. (SBN 233455)
ROSEANNE C. LAZZAROTTO, ESQ. (SBN 251001)
BOORNAZIAN, JENSEN & GARTHE
A Professional Corporation
555 12th Street, Suite 1800
P. O. Box 12925
Oakland, CA 94604-2925
Telephone: (510) 834-4350
Facsimile: (510) 839-1897

Attorneys for Plaintiff,
ESURANCE INSURANCE COMPANY, a Wisconsin corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESURANCE INSURANCE COMPANY, a Wisconsin corporation,<br><br>Plaintiff,<br><br>v.<br><br>WESTCHESTER FIRE INSURANCE COMPANY, a Pennsylvania corporation; STEADFAST INSURANCE COMPANY, a Delaware corporation; and WILLIAM GALLAGHER ASSOCIATES INSURANCE BROKERS, INC., a Massachusetts corporation,<br><br>Defendants. | Case No.: 3:15-cv-00862-RS<br><br>**FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT, BREACH OF THE IMPLIED COVENANT OF GOOD FAITH, AND PROFESSIONAL NEGLIGENCE; DEMAND FOR JURY TRIAL**<br><br>The Hon. Richard Seeborg<br>Action Filed:  February 25, 2015 |

COMES NOW Plaintiff ESURANCE INSURANCE COMPANY ("ESURANCE") and alleges as follows:

## JURISDICTION

1.      This is an action for declaratory judgment pursuant to 28 U.S.C. §2201, breach of contract, breach of the implied covenant of good faith and fair dealing and professional negligence between corporations of different states in which the amount in controversy exceeds $75,000, exclusive of costs and interest.   This Court has original jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a) (1) and (c) (1).

-1-

## VENUE

2.     A substantial part of the events and omissions giving rise to this action, including contract delivery, anticipated performance of contract, breach of contract, and harm resulting from tortious acts occurred within this judicial district, and each of the defendants' business activities and contacts within this judicial district are sufficient to subject defendants to personal jurisdiction within this judicial district.     Accordingly, venue in the Northern District of California is appropriate pursuant to 28 U.S.C. § 1391(b) (1) and (2), and 28 U.S.C. § 1391 (d).

## ALLEGATIONS

3.     ESURANCE is an insurance corporation in good standing, organized and existing under the laws of the State of Wisconsin. ESURANCE is registered to do business and is in good standing in the State of California and maintains its principal place of business in California. Accordingly, ESURANCE is a citizen of the State of Wisconsin and the State of California for the purpose of diversity jurisdiction.

4.     WESTCHESTER FIRE INSURANCE COMPANY ("WESTCHESTER") is a corporation in good standing, organized and existing under the laws of the State of Pennsylvania, with its principal place of business in the State of Pennsylvania. Accordingly, WESTCHESTER is a citizen of the State of Pennsylvania for the purpose of diversity jurisdiction.

5.     STEADFAST INSURANCE COMPANY ("STEADFAST") is a corporation in good standing, organized and existing under the laws of the State of Delaware, with its principal place of business in the State of Illinois. Accordingly, STEADFAST is a citizen of the State of Delaware and the State of Illinois for the purpose of diversity jurisdiction.

6.     WILLIAM GALLAGHER ASSOCIATES INSURANCE BROKERS, INC. ("WILLIAM GALLAGHER") is a corporation in good standing, organized and existing under the laws of the State of Massachusetts, with its principal place of business in the State of Massachusetts. Accordingly, WILLIAM GALLAGHER is a citizen of the State of Massachusetts for the purpose of diversity jurisdiction.

7.     ESURANCE is an insurance company engaged in the enterprise of selling personal lines of insurance to the general public.  Between October 4, 2000 and October 7, 2011, ESURANCE operated as a wholly owned subsidiary of White Mountains Insurance Group, Ltd ("White Mountains").   On October 7, 2011, ESURANCE was acquired by The Allstate Corporation ("Allstate").

8.     WESTCHESTER is an insurance company engaged in the enterprise of selling professional liability insurance to insurance carriers.  ESURANCE is informed and believes, and thereon alleges, that WESTCHESTER is operated as a member of the ACE Group ("ACE"), whose parent is ACE, Ltd.

9.     STEADFAST is an insurance company engaged in the enterprise of selling professional liability excess insurance to insurance carriers.  ESURANCE is informed and believes, and thereon alleges, that STEADFAST is operated as a member of the Zurich in North America Companies, whose parent company is Zurich American Insurance Company.

10.    WILLIAM GALLAGHER is an insurance broker engaged in the enterprise of providing insurance brokerage services to various companies, including insurance carriers.  At all times relevant hereto, WILLIAM GALLAGHER served as the insurance broker for ESURANCE with respect to each of the primary and excess liability policies addressed in this pleading.

11.    On November 1, 2008, WESTCHESTER issued a primary "Claims Made" Management Protection Insurance Policy to White Mountains, Policy No. DON G21669349 005, covering the period from November 1, 2008 to November 1, 2009 ("WTM 2009 POLICY").  White Mountains was identified in the WTM 2009 POLICY as the "Company".  The WTM 2009 POLICY afforded coverage to the "Company" and the "Subsidiaries" of the Company, including, inter alia, ESURANCE and Northern Assurance Company ("Northern Assurance").  The WTM 2009 POLICY was procured for the benefit of, inter alia, ESURANCE, by WILLIAM GALLAGHER.  A true and correct copy of the redacted WTM 2009 POLICY is attached hereto as **Exhibit A.**

12.    The WTM 2009 POLICY consisted of two Coverage Parts -- the "Insurance

-3-

Company Professional Liability" Coverage Part and the "Mutual Fund, Investment Adviser and

Service Provider Professional Liability" Coverage Part.  The Insurance Company Professional

Liability Coverage Part provided indemnity limits of $10,000,000 in the aggregate, subject to

$5,000,000 Retention for each Claim, as follows:

> The Insurer shall pay on behalf of the Insureds Loss which the Insureds become
> legally obligated to pay by reason of any Claim first made by a policyholder or
> third party client of the Company against the Insureds during the Policy Period or
> any applicable Discovery Period for any Wrongful Acts by the Insureds or by a
> person or entity for whom the Insureds are legally responsible in rendering or
> failing to render Professional Services, if such Wrongful Acts take place prior to the
> end of the Policy Period.

13.     The WTM 2009 POLICY defined the term "Claim" in pertinent part as "a written

demand for monetary damages" or "a civil proceeding commenced by the service of a complaint

or similar pleading".  The WTM 2009 POLICY defined the term "Wrongful Act" as "any error,

misstatement, misleading statement, act, omission, neglect or breach of duty actually or allegedly

committed or attempted by the Insured Persons in their capacity as such or by the company or by

any person or organization for whom the Insureds are legally responsible."

14.     The WTM 2009 POLICY provided the following Notice provision with respect to

the submission of a "Claim" under the WTM 2009 POLICY:

> The Insureds shall, as a condition precedent to their rights under any Liability
> Coverage Part, give to the Insurer written notice of any Claim made against the
> Insured as soon as practical after any Executive Officer or the Company's risk
> manager first learns of such Claim, but in no event later than forty–five (45) days[1]
> after expiration of the Policy period or, if exercised, during the Discovery Period.

15.     The WTM 2009 POLICY provided the following Notice provision with respect to

the submission of a "Designated Claim", defined as a Claim which presents a loss and/or exposure

equal to or exceeding $2,000,000 based on the Insured's evaluation, or a Claim for which the

insured has received a written settlement demand which exceeds $5,000,000:

///

---

[1] As amended by Endorsement 4.

-4-

The Insureds shall, as a condition precedent to coverage, give to the Insurer written notice of any Designated Claim made against the Insured as soon as practical after the Company's Risk Manager or General Counsel first learns of such Claim. Such Notice shall be given during the Policy Period or applicable Discovery Period, but in no event more than 30 days after expiration of the Policy Period or applicable Discovery Period.

16.    The WTM 2009 POLICY provided the following Notice provision with respect to a "Wrongful Act" which had not yet manifested into a Claim:

If during the Policy Period or the Discovery Period, if exercised, the Insured first become aware of a specific Wrongful Act which may reasonably give rise to a future Claim covered under a Liability Coverage Part and during such Policy Period or Discovery Period give written notice to the Insurer of:

  a.    the names of the potential claimants and a description of the specific Wrongful Act which forms the basis of their potential claim,

  b.    the identity of the specific Insured allegedly responsible for such specific Wrongful Act,

  c.    the consequences which have resulted or may result from such specific Wrongful Act,

  d.    the nature of the potential monetary damages or non-monetary relief which may be sought in consequence of such specific Wrongful Act, and

  e.    the circumstances by which the Insured first became aware of such specific Wrongful Act,

then any Claim which arises out of such Wrongful Act shall be deemed to have been first made during the Policy Period or Discovery Period, if exercised, in which such written Notice was received by the Insurer. . . .

All notices under any provision of this Policy shall be in writing and given by prepaid express courier, certified mail or fax properly addressed to the appropriate party. ... Notice to the Insurer of any Claim, Wrongful Act or Loss shall be given to the Insurer at the address set forth in Item 6(A) of the Declarations. . . .

Any notice to the Insurer or any Claim, Wrongful Act or Loss shall designate the Coverage Part(s) under which the notice is being given and shall be treated as notice under only the Coverage Part (s) so designated.

///

FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT, BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AND PROFESSIONAL NEGLIGENCE
Case No. 3:15-cv-00862-RS

17.     On November 1, 2006, STEADFAST issued a following form Integrated Excess Insurance Policy to White Mountains, Policy No. IPR 3757632-01, covering the period from November 1, 2006 to November 1, 2009 ("STEADFAST EXCESS POLICY").     The STEADFAST EXCESS POLICY afforded excess liability coverage to, inter alia, ESURANCE on a follow form basis excess to the WTM 2009 POLICY.  The STEADFAST EXCESS POLICY was procured for the benefit of, inter alia, ESURANCE, by WILLIAM GALLAGHER.  A true and correct copy of the redacted STEADFAST EXCESS POLICY is attached hereto as **Exhibit B**.

18.     The STEADFAST EXCESS POLICY provided, in the event of exhaustion of the WTM 2009 POLICY as a result of a payment of a loss covered under the WTM 2009 POLICY, that the STEADFAST EXCESS POLICY would afford primary coverage to, inter alia, ESURANCE for a Loss pursuant to the definitions, insuring clauses, exclusions and condition contained in the WTM 2009 POLICY.

19.     The STEADFAST EXCESS POLICY provided indemnity limits of $15,000,000 for each loss, $30,000,000 each annual period, and $45,000,000 for the entire policy period.   In addition, the policy provided an indemnity sublimit of $10,000,000 Per Loss for Insurance Company Professional Liability claims, subject to an insured retention of $5,000,000 Per Loss.

20.     WILLIAM GALLAGHER is, and at all times during the pendency of the WTM 2009 POLICY and STEADFAST EXCESS POLICY was, directly responsible for providing all notices for all Claims and/or Wrongful Acts involving ESURANCE to WESTCHESTER and STEADFAST under the terms and conditions of the WTM 2009 POLICY and STEADFAST EXCESS POLICY.

21.     ESURANCE is informed and believes that all notices of Claims, Designated Claims, and Wrongful Acts involving ESURANCE to WESTCHESTER and STEADFAST under the terms and conditions of the WTM 2009 POLICY and STEADFAST EXCESS POLICY were provided by WILLIAM GALLAGHER through WILLIAM GALLAGHER's submission to these insurers of periodic "Bordereau Reports".

22.     On or about March 17, 2009, an automobile injury Complaint was filed against

FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT, BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AND PROFESSIONAL NEGLIGENCE
Case No. 3:15-cv-00862-RS

ESURANCE insured Wendy Whitney in the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida, Case No. CACE09015488, entitled:  *Manos Milien v. Wendy Whitney and David Seavey Whitney* ("Milien Complaint").  In relevant part, the Milien Complaint alleged that on December 31, 2008, Ms. Whitney negligently operated her motor vehicle so as to cause bodily injury to Mr. Milien.

23.     At the time of the accident, Wendy Whitney was insured by ESURANCE under an automobile liability policy with limits of $250,000.  Following the accident, an ESURANCE adjuster, Lisa Reynolds, allegedly failed to offer these policy limits to plaintiff in a timely fashion, giving rise to a potential cause of action for "bad faith" under Florida law.

24.     On or before April 30, 2009, ESURANCE completed a bordereau form provided by WILLIAM GALLAGHER for a Wrongful Act Notice reporting under the WTM 2009 POLICY and STEADFAST EXCESS POLICY for the Milien Complaint. ("WHITNEY CLAIM").

25.     On April 30, 2009, WILLIAM GALLAGHER, through its Assistant Vice President, Jamie Pester, provided its Bordereau Report to Westchester.  ("April 2009 Bordereau Report").  ESURANCE is informed and believes that the April 2009 Bordereau Report was also provided to STEADFAST during the pendency of the WTM 2009 POLICY.  Thereafter, WILLIAM GALLAGER continued to provide updated Bordereau Reports pertaining to the WHITNEY CLAIM at least twice yearly to WESTCHESTER through September 11, 2013. A true and correct copy of the redacted April 2009 Bordereau is attached hereto as **Exhibit C.**

26.     At no time during the period of the WTM 2009 POLICY was any Claim ("a written demand for monetary damages" or "a civil proceeding commenced by the service of a complaint or similar pleading") made against ESURANCE with respect to the Whitney Matter.

27.     On June 5, 2009, a Complaint was filed against Northern Assurance of America ("Northern Assurance'), a subsidiary of White Mountains and an Insured under the WTM 2009 POLICY, in the Circuit Court of Jackson County, Missouri, Case No. 0916-CV18325, entitled: *Syndey Kendall v. The Northern Assurance Company of America, et al.*  ("Kendall Complaint") The Kendall Complaint alleged that Northern Assurance committed an act of "bad faith" by

-7-

refusing to defend or indemnify its insureds in connection with personal injury action which resulted in a judgment against the insureds for $10,000,000. The Kendall Complaint sought damages for the satisfaction of the judgment, punitive damages and prejudgment interest.

28.     At all times during the pendency of the WTM 2009 POLICY, ESURANCE was unaware of the Kendall Complaint against Northern Assurance.

29.     On or after December 1, 2009, WILLIAM GALLAGHER provided the first Notice of the Kendall Complaint in a Bordereau Report to WESTCHESTER. ESURANCE is informed and believes that the Kendall Complaint qualified as a "Designated Claim", as the term was defined in the WTM 2009 POLICY.

30.     On November 1, 2010, WESTCHESTER issued a primary "Claims Made" Management Protection Insurance Policy to White Mountains, Policy No. DON G21669349 007, covering the period from November 1, 2010 to November 1, 2011 ("WTM 2011 POLICY"). The WTM 2011 POLICY was procured for the benefit of, inter alia, ESURANCE, by WILLIAM GALLAGHER, its insurance broker. The substantive terms and conditions of the WTM 2011 POLICY were essentially the same as the substantive terms and conditions of the WTM 2009 POLICY. A true and correct copy of the redacted WTM 2011 POLICY is attached hereto as **Exhibit D**.

31.     On or about November 5, 2010, a Florida jury awarded a $31 million dollar verdict against Ms. Whitney in connection with the Milien Complaint.

32.     On December 2, 2010, Ms. Kerian Bunch, Vice President and General Counsel for ESURANCE, prepared an email to Ms. Pester of WILLIAM GALLAGHER concerning the Milien Complaint. In relevant part, the email stated as follows:

> In an abundance of caution, we would like at this time to provide a special notice to our insurers regarding the Whitney lawsuit, which has been regularly reported on our Claims bordereau. Attached is the amended complaint [Milien Complaint]. The lawsuit was filed by a third party claimant against an ESURANCE insured. No claim has yet been made against ESURANCE. However, on November 5, 2010, a Florida Jury awarded a $31 million judgment against our insured. A motion for new trial is pending. A bad faith plaintiffs' attorney has been involved in the case, and it is possible that at some point in the future ESURANCE will be sued for bad

-8-

faith. Please contact Stephen Geist if you need additional information about this matter.

A true and correct copy of the email of Ms. Bunch is attached hereto as **Exhibit E**.

33.     On or about February 24, 2011, Ms. Whitney, without leave of Court, temporarily filed a procedurally and substantively deficient Cross Claim for bad faith against ESURANCE but not its adjuster, Lisa Reynolds. This Cross Claim was voluntarily withdrawn and dismissed on March 23, 2011. Updated Bordereau Reports concerning the WHITNEY CLAIM continued to be produced by WILLIAM GALLAGHER to WESTCHESTER during the WTM 2010 POLICY period.

34.     On October 7, 2011, following its acquisition by Allstate, ESURANCE purchased through its broker, WILLIAM GALLAGHER, a "run off" professional liability policy from WESTCHESTER, Policy No. DON G25569763 00, covering the period from October 7, 2011 to October 7, 2017. ("WESTCHESTER POLICY"). A true and correct copy of the redacted WESTCHESTER POLICY is attached hereto **Exhibit F**.

35.     Under the terms of the WESTCHESTER POLICY, ESURANCE is defined as the "Company" and its employees, inter alia, are defined as "Insureds Persons". The term "Insureds" is defined, either in the singular or plural, as: "1) the Insured Persons; and 2) the Company." Allstate is defined as the "Successor Company". Neither White Mountain nor any of the subsidiaries of White Mountain were identified as Insureds under the WESTCHESTER POLICY. The WESTCHESTER POLICY is not identified anywhere in the policy as a renewal or replacement of any previous policy.

36.     The WESTCHESTER POLICY provides Insurance Company Professional Liability Coverage with limits of $10,000,000 in the aggregate subject to $5,000,000 Retention for each Claim, and afforded indemnity coverage pursuant to the following Insuring Clause for Wrongful Acts which occurred "prior" to the advent of the WESTCHESTER POLICY[2]:

> The Insurer shall pay the Loss of the Insureds for which the Insureds, or the Successor Company, solely in their capacity as a successor-in-interest to the Company, become

---
[2] As amended by a Run-Off Endorsement, Endorsement 4

FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT, BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AND PROFESSIONAL NEGLIGENCE
Case No. 3:15-cv-00862-RS

legally obligated to pay by reason of any Claim first made by a policyholder or third party client of the Company against the Insureds during the Policy Period or any applicable Discovery Period for any Wrongful Acts by the Insureds or by a person or entity for whom the Insureds are legally responsible in rendering or failing to render Professional Services, if such Wrongful Acts take place prior to the inception of the Policy Period. In no event, however, shall this Policy provide any coverage for any Wrongful Act to the Successor Company.

37.    The WESTCHESTER POLICY defined the term "Loss" in pertinent part as "damages, judgments, any award of pre-judgment and post judgment interest, settlements and Defense Costs"; the term "Claim" is defined in pertinent part as  "a civil proceeding commenced by the service of a complaint or similar pleading" or "a written demand for monetary damages" against the Insured Persons and the Company; the term "Wrongful Act" is defined in pertinent part as "any error, misstatement, misleading statement, act, omission, neglect or breach of duty actually or allegedly committed or attempted by the Insured Persons in their capacity as such or by the company or by any person or organization for whom the Insureds are legally responsible"; and the term "Professional Services" is defined in pertinent part as "services performed by or on behalf of the Company for a policyholder".

38.    On October 7, 2011, ESURANCE also purchased through its broker, WILLIAM GALLAGHER, a following form Integrated Excess Insurance Policy from STEADFAST, Policy No. IPR 9319365-00, covering the period from October 7, 2011 to October 7, 2017 ("Second Excess Policy"), which policy afforded follow form liability coverage on basis excess to the WESTCHESTER POLICY.

39.    On April 25, 2013, a Complaint was filed by Ms. Whitney against ESURANCE (the "Company") and its employee, Lisa Reynolds (the "Insured Person") entitled *Wendy Whitney v. ESURANCE Insurance Company and Lisa Reynolds*, Circuit Court of the Seventeenth Judicial Circuit, in and for Broward County, Florida, Case No. CACE-13-010298 ("WHITNEY COMPLAINT"). A true and correct copy of the WHITNEY COMPLAINT is attached hereto as **Exhibit G.**

///

-10-

40.     The WHITNEY COMPLAINT alleged that Ms. Whitney was insured under an automobile policy issued by ESURANCE; that Ms. Whitney had been named as a defendant in the Milien Complaint for recovery of personal injuries sustained by Mr. Milien as a result of Ms. Whitney's negligent operation of a motor vehicle; that the personal injury claims of Mr. Milien were covered under an ESURANCE automobile policy issued to Ms. Whitney; that Ms. Reynolds was an employee of ESURANCE and the primary claims handler for Mr. Milien's claims against Ms. Whitney under her ESURANCE automobile policy; that ESURANCE and Ms. Reynolds had failed to timely tender the ESURANCE automobile policy limits to settle Mr. Milien's claims after Ms. Reynolds had made various misrepresentations to Ms. Whitney advising that she would do so; that Mr. Milien would have accepted the limits had they been timely offered; and that the Milien Action was not settled and ultimately resulted in a judgment against Ms. Whitney in excess of $31,000,000.  Based upon these allegations, the WHITNEY COMPLAINT stated causes of action against ESURANCE and Ms. Reynolds for breach of the implied covenant of good faith and fair dealing and negligent misrepresentation, and sought damages in the amount of the judgment against Ms. Whitney, plus interest, consequential damages and attorneys' fees.

41.     At no time prior to the filing of the WHITNEY COMPLAINT had a written demand for monetary damages been made against ESURANCE or Ms. Reynolds by Ms. Whitney.

42.     At no time prior to the filing of the WHITNEY COMPLAINT had any Claim been made against Ms. Reynolds.

43.     At no time prior to the filing of the WHITNEY COMPLAINT had a Claim been made against ESURANCE, as the procedurally and substantively defective Cross-Claim filed against ESURANCE, which was dismissed without any appearance by ESURANCE, did not "commence any civil proceeding" against ESURANCE.

44.     Following service of the WHITNEY COMPLAINT, ESURANCE retained counsel to defend ESURANCE and Ms. Reynolds.

///

FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT, BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AND PROFESSIONAL NEGLIGENCE
Case No. 3:15-cv-00862-RS

45.     On September 11, 2013, WILLIAM GALLAGHER placed WESTCHESTER and STEADFAST on Notice of the WHITNEY COMPLAINT under the WESTCHESTER POLICY. ("WHITNEY WESTCHESTER CLAIM"). The September 11, 2013, letter included a specific reference to the April 2009 Bordereau Report. A true and correct copy of this letter is attached hereto as **Exhibit H**.

46.     On October 23, 2013, WESTCHESTER issued a reservation of rights letter under the WESTCHESTER POLICY as to the WHITNEY WESTCHESTER CLAIM. A true and correct copy of this reservation of rights letter is attached hereto as **Exhibit I**.

47.     On November 22, 2013, WESTCHESTER declined coverage for the WHITNEY CLAIM under the WTM 2009 POLICY. In its declination letter, WESTCHESTER informed ESURANCE for the first time that the WTM 2009 POLICY had been exhausted and that primary coverage was no longer available under the WTM 2009 POLICY for the WHITNEY CLAIM. A true and correct copy of this declination letter is attached hereto as **Exhibit J**.

48.     ESURANCE has subsequently been advised, and on information and belief alleges, that the exhaustion of the WTM 2009 POLICY was based on the settlement of the Kendall Complaint involving Northern Assurance.

49.     On December 10, 2013, ESURANCE advised WESTCHESTER that it would seek to resolve the WHITNEY COMPLAINT by settlement. WESTCHESTER advised that it would not withhold consent to the settlement.

50.     On or after December 10, 2013, ESURANCE settled the WHITNEY COMPLAINT on behalf of itself and Ms. Reynolds. Based on the confidentiality provision in the settlement agreement with respect to the amount of the settlement of the WHITNEY COMPLAINT, ESURANCE shall seek a protective order from this Court to limit the dissemination of the amount of the settlement. In addition to paying the full amount of the settlement, ESURANCE has paid all reasonable attorney fees and costs in the defense of ESURANCE and Ms. Reynolds in connection with the WHITNEY COMPLAINT in the sum of $499,862.00 as of May 28, 2014.

51.    On December 19, 2014, STEADFAST denied coverage under its Second Excess Policy on the grounds that the WESTCHESTER POLICY had not yet exhausted to satisfy the WHITNEY WESTCHESTER CLAIM.    As to the STEADFAST EXCESS POLICY, STEADFAST asserted that it could find no Notice of the WHITNEY CLAIM and took no position as to whether the April 2009 Bordereau Report satisfied the Notice provision in the WTM 2009 POLICY.  The letter advised that STEADFAST "reserves all rights" under the STEADFAST EXCESS POLICY without offering any payment or reimbursement to ESURANCE under the STEADFAST EXCESS POLICY. A true and correct copy of this declination/reservation of rights letter is attached hereto as **Exhibit K.**

52.    On December 22, 2014, WESTCHESTER issued a "declination letter" under the WESTCHESTER POLICY at to the WHITNEY WESTCHESTER CLAIM.  In relevant part, the declination letter asserted that the Cross-Claim filed in the Milien Complaint against ESURANCE constituted a "Claim" which was "first made" prior to the WESTCHESTER POLICY which placed the WHITNEY WESTCHESTER CLAIM outside the insuring agreement to the WESTCHESTER POLICY.  No mention was made as to absence of any such Cross-Claim against Ms. Reynolds.  The letter also cited to Exclusion A (1) as a basis to decline coverage under the WESTCHESTER POLICY, which provides that WESTCHESTER will not be responsible for "any Claim" made against any Insured which is "based upon, arising out of or attributable to any fact, circumstance or situation which has been the subject of any written notice given under any Policy of which this Policy is a renewal or replacement."  The letter states that to the extent that the WESTCHESTER POLICY was a "renewal or replacement" of the WTM 2009 POLICY, the Exclusion would apply because Notice had been given pursuant to the April 2009 Bordereau Report. The letter also disclaimed coverage under the WTM 2011 POLICY on the grounds that no Notice was given under that policy for the dismissed Cross-Claim. A true and correct copy of this declination letter is attached hereto as **Exhibit L.**

///

///

FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT, BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AND PROFESSIONAL NEGLIGENCE
Case No. 3:15-cv-00862-RS

# FIRST CAUSE OF ACTION

## (DECLARATORY JUDGMENT – AGAINST WESTCHESTER)

53.    ESURANCE incorporates the allegations contained in paragraphs 1 through 52, inclusive, of this Complaint as though fully set forth herein.

54.    An actual controversy exists as to whether WESTCHESTER owes a concurrent duty to indemnify ESURANCE under the WESTCHESTER POLICY with respect to the WHITNEY WESTCHESTER CLAIM.   WESTCHESTER denies and continues to deny that indemnity is afforded for the WHITNEY WESTCHESTER CLAIM under the WESTCHESTER POLICY on the grounds that the dismissed "Cross Claim" filed in the Milien Complaint against ESURANCE alone constituted a Claim "first made" prior to the advent of the WESTCHESTER POLICY, and as such the WHITNEY CLAIM could not qualify as a "Claim" "first made" during the WESTCHESTER POLICY under the terms of the WESTCHESTER Insuring Agreement. Further, WESTCHESTER posits, based on the Notice of the WHITNEY CLAIM under the April 2009 Bordereau Report, that the WHITNEY WESTCHESTER CLAIM may fall within the purview of Exclusion A. 1 to the WESTCHESTER POLICY, which provides that the Insurer shall not be liable for Loss on account of any Claim for which "written notice" has been given under any policy of which "this Policy" is a "renewal or replacement".   However, it is ESURANCE's position that the "first" "Claim" (a civil proceeding commenced by the service of a complaint or similar pleading) made against ESURANCE and Ms. Reynolds was the Complaint filed on May 10, 2013, which was squarely during the pendency of the Westchester Policy; and Exclusion A (1) is inapplicable as the WESTCHESTER POLICY is not a "renewal or replacement" of the WTM 2009 POLICY.

55.    ESURANCE desires a judicial determination with respect to the rights, duties and obligations of WESTCHESTER under the WESTCHESTER POLICY, including the duty to indemnify ESURANCE under the WESTCHESTER POLICY with respect to the WHITNEY CLAIM. Such a determination is necessary and appropriate at this time in order that ESURANCE

1   may, inter alia, properly ascertain its respective rights and remedies against WESTCHESTER and

2   others, including STEADFAST and WILLIAM GALLAGHER.

### SECOND CAUSE OF ACTION

### (DECLARATORY JUDGMENT – AGAINST STEADFAST)

5   56.   ESURANCE incorporates the allegations contained in paragraphs 1 through 55,

6   inclusive, of this Complaint as though fully set forth herein.

7   57.   An actual controversy exists as to whether STEADFAST owes an immediate duty

8   to indemnify ESURANCE under the STEADFAST EXCESS POLICY with respect to the

9   WHITNEY CLAIM. ESURANCE has sought indemnity and continues to seek indemnity for the

10  WHITNEY CLAIM under the STEADFAST EXCESS POLICY, but STEADFAST has withheld,

11  and continues to withhold, indemnity under the STEADFAST EXCESS POLICY on grounds that

12  ostensibly the April 2009 Bordereau Report may not constitute proper Notice of a Wrongful Act

13  under the WESTCHESTER POLICY and that it has no proof that it had ever received the April

14  2009 Bordereau Report.  However, it is ESURANCE's position that WESTCHESTER has already

15  acknowledged that the April 2009 Bordereau Report constituted proper Notice under the WTM

16  2009 POLICY; that Notice to WESTCHESTER constitutes Notice to STEADFAST under the

17  follow form language of the STEADFAST EXCESS POLICY; that the absence of receipt of the

18  April 2009 Bordereau Report, even if true, provides no basis to decline coverage in the absence of

19  prejudice; that the duty to indemnify has been triggered based on the exhaustion of the WTM 2009

20  POLICY; and that STEADFAST owes an immediate obligation to indemnify ESURANCE for the

21  full amount of the WHITNEY CLAIM.

22  58.   ESURANCE desires a judicial determination with respect to the rights, duties and

23  obligations of STEADFAST under the STEADFAST EXCESS POLICY, including the duty to

24  immediately indemnify ESURANCE under the STEADFAST EXCESS POLICY with respect to

25  the WHITNEY CLAIM.  Such a determination is necessary and appropriate at this time in order

26  that ESURANCE may, inter alia, properly ascertain its respective rights and remedies against

27  STEADFAST and others, including WESTCHESTER and WILLIAM GALLAGHER.

28

**THIRD CAUSE OF ACTION**

**(BREACH OF CONTRACT – WESCHESTER POLICY -- AGAINST WESTCHESTER)**

59.    ESURANCE incorporates the allegations contained in paragraphs 1 through 58, inclusive, of this Complaint as though fully set forth herein.

60.    ESURANCE has satisfied all conditions or has otherwise been excused from satisfying all conditions necessary to trigger a duty to indemnify ESURANCE under the WESTCHESTER POLICY for the settlement and defense costs incurred by ESURANCE in connection with the WHITNEY WESTCHESTER CLAIM.

61.    WESTCHESTER owes a contractual duty to indemnify ESURANCE under the WESTCHESTER POLICY for the settlement and defense costs incurred by ESURANCE in connection with the WHITNEY WESTCHESTER CLAIM, which settlement and defense costs qualify as a Loss under the WESTCHESTER POLICY and are not subject to any exclusion under the WESTCHESTER POLICY.

62.    WESTCHESTER has breached its contractual duty to indemnify ESURANCE under the WESTCHESTER POLICY by, among other things, failing to indemnify ESURANCE for the settlement and defense costs incurred by ESURANCE in connection with the WHITNEY WESTCHESTER CLAIM.

63.    As a direct and proximate result of WESTCHESTER'S breach of contract, ESURANCE has been damaged in an amount to be proven at trial, but in any event not less than the amount of the settlement, less any retention, plus reasonable attorneys' fees and costs incurred to defend ESURANCE and Ms. Reynolds against the WHITNEY COMPLAINT in the amount of $499,862.00 as of May 28, 2014, plus prejudgment interest.

**FOURTH CAUSE OF ACTION**

**(BREACH OF CONTRACT – AGAINST STEADFAST)**

64.    ESURANCE incorporates the allegations contained in paragraphs 1 through 63, inclusive, of this Complaint as though fully set forth herein.

65.    ESURANCE has satisfied all conditions or has otherwise been excused from

-16-

1  satisfying all conditions necessary to trigger an immediate duty to indemnify ESURANCE under

2  the STEADFAST EXCESS POLICY for the settlement and defense costs incurred by

3  ESURANCE in connection with the WHITNEY CLAIM.

4      66.    STEADFAST owes an immediate contractual duty to indemnify ESURANCE

5  under the STEADFAST EXCESS POLICY for the settlement and defense costs incurred by

6  ESURANCE in connection with the WHITNEY CLAIM, which settlement and defense costs

7  qualify as a Loss under the STEADFAST EXCESS POLICY and are not subject to any exclusion

8  under the STEADFAST EXCESS POLICY.

9      67.    STEADFAST has breached its contractual duty to indemnify ESURANCE under

10  the STEADFAST EXCESS POLICY by, among other things, failing to immediately indemnify

11  ESURANCE for the settlement and defense costs incurred by ESURANCE in connection with the

12  WHITNEY CLAIM.

13      68.    As a direct and proximate result of STEADFAST's breach of contract,

14  ESURANCE has been damaged in an amount to be proven at trial, but in any event not less than

15  the amount of the settlement, less any retention, plus reasonable attorneys' fees and costs incurred

16  to defend ESURANCE and Ms. Reynolds against the WHITNEY COMPLAINT in the amount of

17  $499,862.00 as of May 28, 2014, plus prejudgment interest.

18  **FIFTH CAUSE OF ACTION**

19  **(BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING –**

20  **UNREASONABLE FAILURE TO PAY BENEFITS UNDER THE WESTCHESTER**

21  **POLICY– AGAINST WESTCHESTER)**

22      69.    ESURANCE incorporates the allegations contained in paragraphs 1 through 68

23  inclusive, of this Complaint as though fully set forth herein.

24      70.    The WESTCHESTER POLICY contains an implied covenant of good faith and fair

25  dealing which obligates WESTCHESTER to, inter alia, reasonably pay covered policy benefits to

26  its Insureds and to do nothing unreasonable to withhold the payment of covered policy benefits.

27

28                                         -17-

71.     WESTCHESTER owes a duty under the WESTCHESTER POLICY to indemnify ESURANCE with respect to the WHITNEY WESTCHESTER CLAIM and WESTCHESTER has breached this duty to indemnify by having failed to indemnify ESURANCE for the WHITNEY WESTCHESTER CLAIM.

72.     The failure of WESTCHESTER to indemnify ESURANCE for the WHITNEY WESTCHESTER CLAIM under the WESTCHESTER POLICY is without proper cause and unreasonable, and therefore WESTCHESTER has breached the implied covenant of good faith and fair dealing in the WESTCHESTER POLICY.   More specifically, in breaching the implied covenant of good faith and fair dealing, WESTCHESTER has subordinated ESURANCE'S interests to its own by refusing to discharge its contractual duty to indemnify under the WESTCHESTER POLICY without reasonable grounds or good cause in the following particulars:

    a.     Failing to conduct a reasonable and unbiased investigation of the WHITNEY WESTCHESTER CLAIM;

    b.     Denying indemnity without regard to facts undermining the articulated predicate for its denial of the WHITNEY WESTCHESTER CLAIM;

    c.     Denying indemnity without regard to the pertinent policy provisions and case law undermining the articulated predicate for its denial of the WHITNEY WESTCHESTER CLAIM;

    d.     Predicating a denial of a covered obligation to benefit its own economic interests; and

    e.     Continuing to deny indemnity despite knowledge that the predicate for its earlier denial is false and insupportable.

73.     As a direct and proximate result of WESTCHESTER'S tortious breach of its duty of good faith and fair dealing, ESURANCE has suffered damages in an amount to be proven at trial, including attorneys' fees and costs incurred to obtain policy benefits under the WESTCHESTER POLICY.

///

-18-

## SIXTH CAUSE OF ACTION

## (BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING – UNREASONABLE FAILURE TO PAY BENEFITS UNDER THE STEADFAST EXCESS POLICY – AGAINST STEADFAST)

74.     ESURANCE incorporates the allegations contained in paragraphs 1 through 73 inclusive, of this Complaint as though fully set forth herein.

75.     The STEADFAST EXCESS POLICY contains an implied covenant of good faith and fair dealing which obligates STEADFAST to, inter alia, reasonably pay covered policy benefits to its Insureds and to do nothing unreasonable to withhold the payment of covered policy benefits.

76.     STEADFAST owes an immediate duty under the STEADFAST EXCESS POLICY to indemnify ESURANCE with respect to the WHITNEY CLAIM, and STEADFAST has breached this duty to indemnify by having failed to indemnify ESURANCE for the WHITNEY CLAIM under the STEADFAST EXCESS POLICY.

77.     The failure to indemnify ESURANCE for the WHITNEY CLAIM under the STEADFAST EXCESS POLICY is without proper cause and unreasonable, and therefore STEADFAST has breached the implied covenant of good faith and fair dealing in the STEADFAST EXCESS POLICY.  More specifically, in breaching the implied covenant of good faith and fair dealing, STEADFAST has subordinated ESURANCE'S interests to its own by refusing to discharge its contractual duty to indemnify ESURANCE under the STEADFAST EXCESS POLICY without reasonable grounds or good cause in the following particulars:

   a.     Failing to conduct a reasonable and unbiased investigation of the WHITNEY CLAIM;

   b.     Withholding its immediate obligation to indemnity and forcing ESURANCE to litigate against WESTCHESTER to establish concurrent primary coverage under the WESTCHESTER POLICY;

FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT, BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AND PROFESSIONAL NEGLIGENCE
Case No. 3:15-cv-00862-RS

1      c.     Denying indemnity without regard to the pertinent policy provisions and case law

2                undermining the articulated predicate for its denial of the WHITNEY CLAIM;

3      d.     Predicating a denial of a covered obligation to benefit its own economic interests;

4                and

5      e.     Continuing to deny indemnity despite knowledge that the predicate for its denial is

6                false and insupportable.

7    78.    As a direct and proximate result of STEADFAST's tortious breach of its duty of

8 good faith and fair dealing, ESURANCE has suffered damages in an amount to be proven at trial,

9 including attorneys' fees and costs incurred to obtain policy benefits under the WESTCHESTER

10 POLICY.

11    79.    After collecting the premium for the STEADFAST EXCESS POLICY,

12 STEADFAST failed to create or implement appropriate claims management practices or oversight

13 for the handling of claims presented for coverage under the STEADFAST EXCESS POLICY.

14    80.    STEADFAST employee Melissa Weinberg was the claims professional responsible

15 for handling the WHITNEY CLAIM under the STEADFAST EXCESS POLICY.

16    81.    In connection with the WHITNEY CLAIM under the STEADFAST EXCESS

17 POLICY, Ms. Weinberg failed to conduct any substantive investigation regarding coverage; failed

18 to effectively review the written materials submitted with the claim; failed to provide ESURANCE

19 with a reservation of rights letter; failed to communicate with ESURANCE; failed to diary

20 investigation and follow-up actions necessary to properly handle the claim; and failed to take any

21 action whatsoever for over nine months after the first day that she was assigned the WHITNEY

22 CLAIM.

23    82.    STEADFAST performed no meaningful supervision or oversight over

24 Ms. Weinberg's handling of the WHITNEY CLAIM for over nine months after the first day that

25 Ms. Weinberg was assigned to adjust the WHITNEY CLAIM and failed to require use of a claims

26 handling diary system, either through her direct supervisor, Team Leader Kenneth Coffin, or his

27 supervisor, Claims Director James Mandarino.

28

FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT, BREACH OF
THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AND PROFESSIONAL NEGLIGENCE
Case No. 3:15-cv-00862-RS

83.     STEADFAST ratified the aforementioned wrongful conduct of Ms. Weinberg in connection with the WHITNEY CLAIM.

84.     The foregoing conduct of STEADFAST was outrageous and despicable and was carried out with deliberate intent to vex, injure, and annoy ESURANCE and/or with a willful and conscious disregard for ESURANCE's rights and has subjected ESURANCE to cruel and unjust hardship in conscious disregard of ESURANCE's rights to receive covered policy benefits under the STEADFAST EXCESS POLICY in connection with the WHITNEY CLAIM.  Such conduct warrants the imposition of punitive and exemplary damages in an amount sufficient to punish and make an example of STEADFAST in order to deter such conduct in the future.

## SEVENTH CAUSE OF ACTION

### (PROFESSIONAL NEGLIGENCE – AGAINST WILLIAM GALLAGHER)

85.     ESURANCE incorporates the allegations contained in paragraphs 1 through 84, inclusive, of this Complaint as though fully set forth herein.

86.     In acting at all relevant times as ESURANCE'S insurance broker, WILLIAM GALLAGHER owed a duty to ESURANCE to use the skill, prudence, and diligence that other members of its profession commonly possess and exercise, including providing proper notice of all Claims to ESURANCE's liability insurers, WESTCHESTER and STEADFAST, under the terms and conditions of their policies.

87.     Should for any reason it be adjudged that coverage is not afforded to ESURANCE for the WHITNEY CLAIM under either the WTM 2009 POLICY or the STEADFAST EXCESS POLICY based on, among other things, improper Notice; or it is adjudged that coverage would have been afforded to ESURANCE under the WTM 2011 POLICY if a special Notice had been provided as requested by ESURANCE; then WILLIAM GALLAGHER has breached its duty to perform its professional services for ESURANCE, including providing proper Notice to WESTCHESTER and/or STEADFAST with the skill, prudence, and diligence that other members of the insurance brokerage profession commonly possess and exercise, which ESURANCE, by custom, practice and agreement with WILLIAM GALLAGHER, would have relied upon to its

-21-

1  detriment.

2      88.      Should for any reason it be adjudged that coverage is not afforded to ESURANCE

3  for the WHITNEY CLAIM under either the WTM 2009 POLICY, the STEADFAST EXCESS

4  POLICY or the WTM 2011 POLICY based on improper Notice, and if it is adjudged that coverage

5  is not afforded for the WHITNEY WESTCHESTER CLAIM under the WESTCHESTER

6  POLICY, then as a direct and proximate result of WILLIAM GALLAGHER'S negligent

7  performance of professional services, ESURANCE has been damaged in an amount to be proven

8  at trial, but in any event not less than the amount of the settlement, less any retention, plus

9  reasonable attorneys' fees and costs incurred to defend ESURANCE and Ms. Reynolds against the

10  WHITNEY COMPLAINT in the amount of $499,862.00 as of May 28, 2014, plus prejudgment

11  interest, plus attorney fees and costs incurred in connection with this matter, which fees and costs

12  are the foreseeable result of WILLIAM GALLAGHER'S negligence pursuant to the "tort of

13  another" doctrine.

14                          **PRAYER FOR RELIEF**

15      WHEREFORE, ESURANCE prays for judgment as follows:

16      Against WESTCHESTER:

17      1.      For a declaration as to the duty to indemnify ESURANCE under the

18              WESTCHESTER POLICY with respect to the WHITNEY WESTCHESTER

19              CLAIM;

20      2.      For contractual and tort damages in an amount to be proven at trial;

21      3.      For attorneys' fees and costs;

22      4.      For prejudgment interest as permitted by law; and

23      5.      For such other and further relief as the Court may deem just and proper under the

24              circumstances;

25      Against STEADFAST:

26      1.      For a declaration as to the immediate duty to indemnify ESURANCE under the

27              STEADFAST EXCESS POLICY with respect to the WHITNEY CLAIM;

28

-22-

2.     For contractual and tort damages in an amount to be proven at trial;

3.     For attorneys' fees and costs;

4.     For prejudgment interest as permitted by law;

5.     For punitive damages; and

6.     For such other and further relief as the Court may deem just and proper under the circumstances; and

Against WILLIAM GALLAGHER:

1.     For damages in an amount to be proven at trial;

2.     For attorneys' fees and costs;

3.     For prejudgment interest as permitted by law; and

4.     For such other and further relief as the Court may deem just and proper under the circumstances.

DATED:  September 12, 2016

BOORNAZIAN, JENSEN & GARTHE
A Professional Corporation


By: _____
THOMAS E. MULVIHILL, ESQ.
TAMIKO A. DUNHAM, ESQ.
ROSEANNE C. LAZZAROTTO, ESQ.
Attorneys for Plaintiff,
ESURANCE INSURANCE COMPANY

///

///

///

///

///

///

///

///

-23-

FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT, BREACH OF
THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AND PROFESSIONAL NEGLIGENCE
Case No. 3:15-cv-00862-RS

## DEMAND FOR JURY TRIAL

ESURANCE hereby demands a jury trial as provided by Rule 38 of the Federal Rules of Civil Procedure.

DATED:  September 12, 2016

BOORNAZIAN, JENSEN & GARTHE
A Professional Corporation

By: _____
THOMAS E. MULVIHILL, ESQ.
TAMIKO A. DUNHAM, ESQ.
ROSEANNE C. LAZZAROTTO, ESQ.
Attorneys for Plaintiff,
ESURANCE INSURANCE COMPANY

27367\732564

-24-